Rockingham
No. 7750

RICHARD J. BIELINSKI

v.

JOAN A. MILLER
RICHARD A. MILLER
WINDHAM ENTERPRISES, INC.

January 23, 1978

*Winer, Lynch, Pillsbury & Howorth,* of Nashua (*Sharon A. Coughlin* orally), for the plaintiff.

*Anthony R. DiFruscia* and *Michael James Gorham,* of Lawrence, Massachusetts (*Mr. Gorham* orally), for the defendants.

BOIS, J.   Petition pursuant to RSA 294:80-a (Supp. 1975) requesting that the powers of the board of directors of Windham Enterprises, Inc. be suspended and that the powers of the board be thereafter exercised by the shareholders. Trial by a Master (*Leonard C. Hardwick,* Esq.) resulted in a verdict (approved by *Perkins,* J.) for the defendants. Plaintiff seasonably excepted to the denial of his motion to set aside the verdict. All questions of law raised by the foregoing exception or any exceptions appearing in the record were reserved and transferred by *Loughlin,* J. We remand.

The master found that the plaintiff and the defendant Richard A. Miller set about organizing a corporation to be known as Windham Enterprises, Inc. Articles of agreement were drafted and at the first meeting of the incorporators, held on January 2, 1973, the plaintiff was elected president, Richard A. Miller treasurer, and defendant Joan A. Miller (Richard's wife) clerk of the corporation. All three were elected to the board of directors. It was voted that the capital stock consist of 500 shares of no par value stock and "[t]o issue one hundred shares each to Richard D. J. Bielinski and Richard A. Miller for one thousand dollars, in cash." Additional authorized stock could be issued by the board of directors if certain specified procedures were followed. Proposed bylaws were presented and adopted. Neither the articles of agreement nor the bylaws contain a provision for resolving a disagreement between two equal shareholders relative to the election of a board of directors.

Five months before August 6, 1973, at which time a certificate of incorporation for Windham Associates was approved by the secretary of state, the plaintiff had paid $1,300 towards the purchase of an automobile which was registered in the corporate name

but which was in his possession and exclusively used by him. The balance of the purchase price was paid with proceeds from a bank loan to the corporation.

In order to obtain a loan, plaintiff and Richard Miller, under penalties of perjury, represented to the Small Business Administration that each was a fifty percent owner of the corporation. As security for the loan, the plaintiff pledged a savings account passbook in the amount of $16,000, and both plaintiff and defendant gave second mortgages on their residences.

At a specially called meeting of the board of directors held on July 2, 1975, the plaintiff, due to illness, resigned both as a member of the board and as president of the corporation. At that meeting, the remaining board members subsequently voted to "authorize one (1) share of stock to Joan A. Miller." The defendants claim that this vote was confirmed at the annual meeting of stockholders and directors held on October 14, 1975. Plaintiff, alleging that notice as provided for by the bylaws was lacking, did not attend. The master made no determination as to whether the one share of stock was actually issued or paid for. Plaintiff subsequently brought this petition to regain a voice in the management of the corporation. The master recommended dismissal of the action, holding that "Bielinski is not a stockholder of Windham Enterprises, Inc. and therefore has no standing to bring a petition under RSA 294:80A." He found "that Bielinski never paid anything into the corporation for stock and that no stock certificate was ever issued to him. In fact there is grave doubt whether Miller ever paid anything to the corporation for his stock, and on the evidence the master finds that no stock certificates were ever issued to Miller."

The statute under which the plaintiff seeks relief provides:

294:80-a Deadlock Provisions for Certain Corporations. A shareholder in a closely held corporation having two shareholders each of whom own fifty percent of the voting stock may, in the event of a deadlock as defined in 294:80-b, petition the superior court of the county of the principal place of business of the corporation to have the powers of the board of directors suspended, which powers shall then be exercised by the shareholders. If the shareholders shall not resolve the deadlock within six months from the filing of the petition, the corporation shall be dissolved.

294:80-b Definitions. For the purpose of RSA 294:80-a "deadlock" shall mean a situation where two equal shareholders cannot agree upon the election of a board of directors and there is no provision in the articles of agreement of incorporation for resolving such disagreement.

Plaintiff's principal argument is that the master erred in finding that he "never paid anything into the corporation for stock." He argues that various documents prepared and executed by the parties, including the State and federal tax returns filed by the corporation and the applications submitted by it to the Small Business Administration, are strong evidence of plaintiff's fifty percent ownership of the corporation. He asserts that the master took an unduly restrictive view of the down payment made on the automobile purchased as a company car. According to the plaintiff, stock may be validly purchased by money or property given to the corporation even if not formally ear-marked as being given in exchange for stock.

■■■  A requirement that there be a formal tender of consideration for stock may be unduly technical. 18 C.J.S. *Corporation* § 240 (1939). This is especially true in the context of a close corporation, where the coalescence of ownership and management tends to result in informality of procedures. *See* 2 F. O'Neal, Close Corporations § 8.02 (2d ed. 1971); 2 W. Fletcher, Cyclopedia of the Law of Private Corporations § 394.1 (rev. ed. 1969). Nevertheless, we cannot say that the master acted unreasonably, particularly when the plaintiff himself testified that the down payment he made on the car was "not necessarily" intended as payment for stock. A review of the record supports the master's finding and therefore the finding must stand. *Cataldo v. Grappone,* 117 N.H. 1043, 381 A.2d 1194 (1977); *Wheelen v. Robinson,* 117 N.H. 1032, 381 A.2d 742 (1977).

■■  We do find merit, however, in plaintiff's argument that he is entitled to relief under the statute because he is a *subscriber* to fifty percent of the stock of the corporation. "A subscriber is one who subscribes for shares in a corporation, whether before or after incorporation." H. Henn, Law of Corporations § 115 n.1 (2d ed. 1970). When plaintiff and Richard Miller each agreed to take, and pay $1,000 for, 100 shares of no par stock, they expressed a clear intent to become subscribers to the corporation, and their subsequent actions were consistent with this intent. An agreement

to subscribe to a corporation's stock need not be embodied in any particular form or instrument; in fact, the agreement need not even be in writing. *Manchester Street Ry. v. Williams,* 71 N.H. 312, 316–17, 52 A. 461, 463–64 (1902). Here the subscription agreement was in fact set out in the minutes of the first meeting of the incorporators and was entered into before the corporation formally came into existence. Preincorporation subscriptions are sometimes treated as mere offers, revocable until accepted by the corporation, and although "usually formally accepted at the first meeting of the board of directors [,] . . . they can be impliedly accepted." H. Henn, Law of Corporations § 115 n.9 (2d ed. 1970); *Osburn v. Crosby,* 63 N.H. 583, 3 A. 429 (1885); *Melvin v. Hoitt,* 52 N.H. 61, 67 (1864); 18 C.J.S. *Corporations* § 236 (1939); 1 H. Oleck, Modern Corporation Law § 216, at 563 (1958); 4 N. Lattin, Corporations § 34, at 122 (2d ed. 1971). Assuming that the plaintiff's subscription is treated as a mere offer, the corporation's conduct here constituted an implied acceptance of the offer. Additionally, defendants' counsel himself, in argument, agreed that the plaintiff was a subscriber to the stock of Windham Enterprises.

By virtue of a valid and binding subscription, a subscriber is entitled to the rights and privileges of a stockholder even though he has not yet paid for his shares under the subscription agreement. *Manchester Street Ry. v. Williams supra;* H. Henn, Law of Corporations § 169, at 311–12 (2d ed. 1970); 3 H. Oleck, Modern Corporation Law § 216, at 563 (1959); *accord Babbitt v. Pacco Investors, Corp.,* 246 Ore. 261, 270–71, 425 P.2d 489, 494–95 (1967). The plaintiff (as well as the defendant) may remain liable to the corporation under the agreement for the payment of the stock.

We therefore hold that, where plaintiff subscribed to fifty percent of the stock that was to be issued by the corporation, he has standing to seek relief under RSA 294:80-a (Supp. 1975), provided that he is one of two *equal shareholders* and a "deadlock" exists.

The record contains evidence that one share of stock was authorized to be issued to Joan Miller. If such was done in compliance with the corporate bylaws and all relevant statutory or other requirements, plaintiff may not be a shareholder entitled to relief under the statute. The master made no finding in this regard; we therefore remand for a determination of whether the purported is-

suance of stock to Joan Miller effectively deprived plaintiff of his fifty percent ownership. If plaintiff is found to be an equal shareholder the master must then determine whether a "deadlock" exists in order to permit granting of the petition.

*Remanded.*

LAMPRON, J., did not participate in the decision of this case; the others concurred.