[No. 22261–9–I.   Division One.   August 21, 1989.]

M/V LA CONTE, INC., ET AL, *Respondents,* v. MONROE
LEISURE, ET AL, *Appellants.*

*Karl Eric Dickman* and *David S. Teske & Associates,* for appellants.

*Paul L. Anderson* and *Madden, Poliak, MacDougall & Williamson,* for respondents.

WINSOR, J.—Monroe and Beth Leisure appeal from an adverse declaratory judgment entered against them in an action between former directors of M/V La Conte, Inc. We affirm.

On May 23, 1987, the Leisures and Johnnie Dontos entered into an agreement concerning their interests in and duties as to a vessel, the La Conte, and their roles in a proposed corporation, M/V La Conte, Inc. The agreement was memorialized in a "Letter of Understanding Between Johnnie Dontos & Monroe Leisure," signed by Dontos and Monroe. The letter provided that a Subchapter S corporation would be formed to hold ownership of the La Conte; that Dontos and both Leisures would be directors of the new corporation; and that the Leisures would acquire a 15 percent interest in the corporation upon transferring a real estate contract to Dontos.[1] It also provided that at the first

---

[1]Before the May 23 meeting, Dontos made a $50,000 down payment on the La Conte with a combination of personal funds, and funds provided him by a business for which he did consultant work. Under the May 23 agreement, Dontos also assumed personal responsibility for making all remaining payments on the vessel.

directors' meeting, Monroe would be elected president, Beth would be elected vice–president, and Dontos would be elected secretary–treasurer.

Also on May 23, and presumably pursuant to their letter of understanding, Dontos and the Leisures prepared and signed articles of incorporation and a Subchapter S election form. The articles named the Leisures and Dontos as the corporation's incorporators and directors. The election form stated that on May 23, 1987, Dontos owned 85 shares of stock and the Leisures owned 15 shares of stock.

The State filed the articles of incorporation for M/V La Conte, Inc., on June 12, 1987. The parties did not hold a directors' meeting after the certificate was issued. No officers were ever formally elected, and no shares of stock were formally issued.

On July 24 or 25, 1987, a tugboat struck and destroyed the La Conte. For reasons not clear from the record, Dontos and the Leisures had a falling out concerning how to obtain compensation for the loss. Their disagreement resulted in Dontos convening a "shareholder's meeting" on September 15, 1987, at which he, as majority shareholder, voted to remove the Leisures from the board of directors and as corporate officers. This meeting was immediately followed by a "directors' meeting", convened by the Leisures, at which the Leisures voted to remove Dontos as secretary–treasurer, and resolved to retain the law firm of David S. Teske and Associates to represent the corporation in matters related to the tug accident.[2] All parties and their attorneys were present at both meetings.

Dontos and the corporation sought resolution of the resultant corporate control issues by filing a petition for declaratory relief. After a trial to the court, judgment was entered that:

---

[2]On September 4, in his capacity as corporate president, Monroe Leisure had signed a retainer agreement for the Teske firm to represent M/V La Conte, Inc. Dontos, who under the letter of understanding was responsible for corporate financial affairs, had previously retained another attorney to represent the corporation.

1. The Leisures have a potential or actual shareholder interest in the corporation, not to exceed a 15% interest.

2. Plaintiff Dontos on September 15, 1987 had a right to remove the Leisures as directors and officers of the corporation, he owning 85% shareholder interest.

3. On September 15, 1987, the Leisures were removed as officers and directors of the corporation.

4. The Leisures did not have the authority on behalf of the corporation to hire David S. Teske and Associates and commence law suits in the name of the corporation. Said lawyers should withdraw from any and all such representation; failing such they should be removed.

## EFFECT OF SEPTEMBER 15 MEETINGS

Under Washington law, corporate directors can be removed only "by a vote of the holders of a majority of the shares then entitled to vote at an election of directors." RCW 23A.08.380. The power to elect and remove corporate officers rests with the board of directors. RCW 23A.08.470–.490.

The Leisures contend that because the corporation never issued shares of stock, Dontos did not acquire shareholder status. According to the Leisures, Dontos was therefore incapable of voting to remove them from the board and to thereby take away their corporate authority to retain the Teske law firm. This argument overlooks the effect of the May 23 letter of understanding, which the Leisures concede was a stock subscription agreement.[3]

■ "Stockholder status may be created by a subscription for stock and the issuance of a certificate is not necessary to make a subscriber a stockholder". (Footnote omitted.) 18A Am. Jur. 2d *Corporations* § 582, at 486 (1985); *see also* 4 W. Fletcher, *Corporations* § 1375 (1985); *Babbitt v. Pacco Investors Corp.*, 246 Or. 261, 425 P.2d 489, 494–95 (1967). In other words, "a subscription, as soon as

---

[3]Stock subscriptions are agreements "to pay to the corporation a stated sum for a specified number of unissued shares." Kummert, *Stock Subscription Law for Practitioners,* 63 Wash. L. Rev. 21, 24 (1988). A "buy–sell" agreement that involves creation of a new corporation may be construed as being equivalent to a subscription to stock in the new corporation. 4 W. Fletcher, *Corporations* § 1363.1 (1985).

made, ordinarily confers the rights and liabilities of a stockholder." 4 W. Fletcher § 1372, at 19; *accord, Bielinski v. Miller,* 118 N.H. 26, 382 A.2d 357, 359 (1978); *see also Hoppe v. Rittenhouse,* 279 F.2d 3, 8–9 (9th Cir. 1960). Thus, under the May 23 stock subscription agreement, Dontos acquired majority stockholder rights. In the unique circumstances of this case, Dontos consequently was able, on September 15, to vote to remove the Leisures from the board. Once so removed, the Leisures lacked power to pass the resolution retaining Teske and Associates; the resolution is therefore invalid.

The Leisures seek to avoid this result by attacking the validity of the subscription agreement, contending that: (1) it was not formally adopted by the board of directors; (2) it impermissibly restricts the board's management duties; and (3) it is voidable due to Dontos' "promoter fraud". We disagree.

The Leisures' first two contentions fail under the rule that when a corporation is formed pursuant to a preincorporation subscription agreement and acts pursuant to that agreement after formal incorporation, corporate acceptance is presumed. 18A Am. Jur. 2d, *supra* § 589; *Molina v. Largosa,* 51 Hawaii 507, 465 P.2d 293, 295 (1970); *Rutenbeck v. Hohn,* 143 Iowa 13, 121 N.W. 698 (1909); *Bielinski,* 382 A.2d at 359. The instant case falls within this rule.[4] Thus, M/V La Conte, Inc.'s lack of formal acceptance is irrelevant, and the corporation is deemed to have impliedly accepted and ratified the entire subscription agreement, including those provisions allegedly infringing on management capabilities.

---

[4]The trial court found that until the tug accident, "the parties did not act inconsistent[ly] with their May 23 agreement". The Leisures do not challenge this finding; it is therefore a verity on appeal. *E.g., Metropolitan Park Dist. v. Griffith,* 106 Wn.2d 425, 433, 723 P.2d 1093 (1986).

The Leisures' last contention, that Dontos' "promoter fraud" makes the subscription voidable, is not properly before us and we do not address it. So far as we can tell, this issue was not presented to the trial court. Therefore, it cannot be raised on appeal.[5] RAP 2.5.

We hold that the May 23 preincorporation agreement is a valid and enforceable subscription agreement which the corporation abided by and adopted after incorporation. Under the agreement, Dontos held a majority shareholder interest in the corporation, and was therefore empowered to vote to remove the Leisures from the board. RCW 23A.08-.380. Once he did so, the Leisures were without power or authority to pass the corporate resolution retaining the Teske firm.

## TRIAL COURT'S FINDINGS AND CONCLUSIONS

The Leisures next contend that the trial court erred by entering findings and conclusions on issues not before it in the declaratory judgment proceeding. We do not address the merits of this contention because the Leisures have not identified which findings and conclusions are challenged. An appellant who fails to identify and set forth challenged findings violates RAP 10.3(g) and 10.4(c). This, alone, is justification for refusing to consider an assignment of error. *E.g., In re J.K.,* 49 Wn. App. 670, 676, 745 P.2d 1304 (1987), *review denied,* 110 Wn.2d 1009 (1988).

## EXPERT TESTIMONY

The Leisures also contend that the trial court erred when it refused to allow their expert witness to testify at trial.

---

[5]If, on the other hand, the trial court did consider evidence and arguments relating to "promoter fraud", we presume that by not making findings on this issue the court necessarily rejected this claim. *See Smith v. King,* 106 Wn.2d 443, 451, 722 P.2d 796 (1986) (the absence of a finding as to a factual issue is presumed to result from a lack of proof by the party having the burden of proof on the issue); 4 W. Fletcher § 1626 (burden of showing fraud inducing subscription is on the subscriber).

Again, we disagree. Despite rules and orders setting discovery cutoff dates well before trial,[6] and despite being under a duty "seasonably to supplement" their responses to Dontos' expert witness interrogatories, CR 26(e)(1), the Leisures did not disclose their proposed expert witness until after the first full day of trial.

■ It is well settled that "[e]xclusion of the expert's testimony is an appropriate sanction for failure to supply . . . supplementary responses." *Detwiler v. Gall, Landau & Young Constr. Co.,* 42 Wn. App. 567, 572–73, 712 P.2d 316 (1986); *Rupert v. Gunter,* 31 Wn. App. 27, 32, 640 P.2d 36 (1982). The decision to use this sanction is discretionary with the trial court and will not be disturbed absent an abuse. *Lampard v. Roth,* 38 Wn. App. 198, 202, 684 P.2d 1353 (1984). We find no abuse here.

### REPORT OF PROCEEDINGS

The Leisures further contend that the trial court committed reversible error by refusing, over counsel's objections, to have a court reporter transcribe posttrial proceedings concerning adoption of the court's conclusions of law. The Leisures argue that under RCW 2.32.200,[7] a trial court cannot deny a party's request for a verbatim record.

■ RCW 2.32.200 evidences the Legislature's intent to ensure that full reports of oral proceedings be taken at a party's request. *State v. Wilcox,* 20 Wn. App. 617, 619, 581 P.2d 596 (1978). It does not, however, provide for remand or reversal when such a request is denied. It is therefore

---

[6]King County Local Rule 37(g) requires that absent stipulation of the parties, or a court order entered upon good cause shown, all discovery, including supplementations, must be completed no later than 35 calendar days before trial. Moreover, in December 1987, the parties were expressly ordered to complete all discovery pertaining to the declaratory judgment action by March 7, 1988, 1 month before trial.

[7]RCW 2.32.200 provides in pertinent part that "upon the trial of any cause . . ., if either party to the suit or action, or his attorney, request the services of the official reporter, the presiding judge shall grant such request".

appropriate to treat a violation of the statute in the same manner as any other defect in the record, *i.e.,* to grant a new trial only if appellant demonstrates prejudice resulting from the incomplete record,[8] and attempts to cure defects in the record. *State v. Miller,* 40 Wn. App. 483, 486–89, 698 P.2d 1123 (discussing remedy when loss of reporter's notes resulted in incomplete record), *review denied,* 104 Wn.2d 1010 (1985).[9]

Here, the Leisures have made no effort to show what prejudice they suffered from the trial court's denial of their request for a court reporter. We doubt that any such showing could be made, since the only matters dealt with at the hearing concerned adoption of conclusions of law. *Cf. Sabatier v. Dabrowski,* 586 F.2d 866, 869 (1st Cir. 1978) (no suggestion of prejudice from incomplete transcript where appeal rests on legal arguments rather than on questions of fact). The trial court's error therefore does not require remand or reversal.

### JUDICIAL ISSUANCE OF STOCK

The Leisures' final contention is that the trial court issued stock for the corporation, and that this was error. However, in their assignments of error the Leisures do not identify the findings or conclusions indicating that the court issued corporate stock. We therefore need not reach

---

[8]Most other jurisdictions addressing whether a defective record warrants a new trial require that the appellant show prejudice resulting from the defect. *See, e.g., United States v. Gillis,* 773 F.2d 549, 554–55 (4th Cir. 1985); *Sabatier v. Dabrowski,* 586 F.2d 866, 869–70 (1st Cir. 1978); *United States v. Weiner,* 578 F.2d 757, 789 (9th Cir.), *cert. denied,* 439 U.S. 981, 58 L. Ed. 2d 651, 99 S. Ct. 568 (1978); *United States v. Alfonso,* 552 F.2d 605, 620 (5th Cir.), *cert. denied,* 434 U.S. 857, 54 L. Ed. 2d 129, 98 S. Ct. 179 (1977); *State v. Johnson,* 358 N.W.2d 127, 130–31 (Minn. Ct. App. 1984); *State v. Dupris,* 373 N.W.2d 446, 449 (S.D. 1985).

[9]Litigants may show prejudice by supplying affidavits of the trial court or counsel, *Miller,* 40 Wn. App. at 488, or a narrative statement of the hearing, *National Dairy Prods. Corp. v. Rittle,* 487 S.W.2d 894, 896 (Ky. 1972) (party appealing must make up any deficiency in the record by supplying a narrative statement from which the reviewing court can determine whether appellant was prejudiced).

this issue. RAP 10.3; 10.4(c). In any event, this contention is without merit given our holding as to the effect of the subscription agreement.

The judgment is affirmed. In addition, as a result of the Leisures' numerous violations of the Rules of Appellate Procedure, not all of which are referenced in this opinion, we will consider imposing sanctions in a separate proceeding.

GROSSE, A.C.J., and WEBSTER, J., concur.