IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Dependency of | ) | |
| | ) | No. 32686-1-IIII |
| R.B.S. and E.B.S. | ) | (Consolidated with |
| | ) | 32687-0-III, 32689-6-III |
| | ) | and 32690-0-III) |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

KORSMO, J. — OS and BS appeal from the trial court's refusal to dismiss the dependency action involving their two children on the basis of newly discovered evidence. We affirm.

## FACTS

The operative facts governing this appeal are largely procedural in nature.[1] OS gave birth to a daughter, EBS, in early 2006. The child was brought to a hospital in mid-June that year. Doctors discovered several fractures in various stages of healing. The infant also had scratches and bruises that had been covered with makeup.

A dependency action was initiated and proceeded to trial. Medical evidence was presented by both sides concerning the child's condition. The parents explained that EBS

---

[1] Additional factual allegations underlying specific arguments will be discussed in conjunction with those issues.

had been dropped in the bathtub once and had seizures; they also explained that the child scratched herself with untrimmed fingernails. The trial court ultimately found EBS and her older brother, RBS, dependent on the basis of numerous nonaccidental injuries suffered by the younger child while in the exclusive control of her parents.[2] Clerk's Papers (CP) at 1137. The order was entered in March 2007. The parents did not appeal from the dependency order.

Soon thereafter criminal charges were filed against OS. The matter proceeded to jury trial. OS defended on the basis that her brother likely had inflicted the injuries suffered by EBS. The jury disagreed and convicted her as charged in late 2009. OS was sentenced to 10 years in prison and a no-contact order entered prohibiting OS from seeing EBS. Due to an instructional error, this court in August 2011 reversed the conviction in an unpublished opinion, *State v. [OS]*, no. 28668-1-III. We also confirmed that the evidence was sufficient to support the verdict and remanded for a new trial.

While the criminal conviction was on appeal, the juvenile court terminated the parental rights of both OS and BS with respect to both children in June 2010. The basis for termination was the criminal conviction of OS and the failure of BS to protect the children. The parents had taken part in all offered services but had not progressed toward reuniting with the children.

---

[2] The court found that EBS had suffered fractures of the skull, arms, leg, and ribs. Clerk's Papers (CP) at 1135.

No. 32686-1-III (Consolidated with 32687-0-III; 32689-6-III; and 32690-0-III)
*In re R.B.S. & E.B.S.*

The criminal case was tried to the bench in February 2014. For the retrial, OS had retained a doctor who reviewed the injuries suffered by EBS. He opined that each of the child's numerous injuries could have an innocent medical explanation and disagreed that the child had been abused. A second doctor agreed that the child's X-rays did not preclude finding the injuries were accidental. The trial judge acquitted OS.

Two months later, in April 2014, the termination orders were vacated and the termination petitions dismissed due to the acquittal. The parents then moved to set aside the initial, and all subsequent, dependency orders, relying primarily on the medical evidence obtained for the criminal trial. The motion also alleged improper behavior by various actors in the dependency proceeding.

The trial court denied the motion in June 2014. In a thorough written ruling, the court concluded that the motion was untimely and that each argument also was unavailing. CP at 314-317. The parents then timely appealed to this court.

ANALYSIS

The parents broadly cast three arguments for our consideration—whether the dependency orders should have been set aside due to the medical evidence presented at the second criminal trial or because of the misconduct by government workers, and whether the parents were deprived of due process of law under the facts of this case by the burden of proof. We address the new trial and misconduct arguments, and their respective sub-arguments, plus the trial court's timeliness ruling, before turning to the due process claim.

3

No. 32686-1-III (Consolidated with 32687-0-III; 32689-6-III; and 32690-0-III)
*In re R.B.S. & E.B.S.*

*Medical Evidence and Fact of Acquittal*

Both parents argue that the acquittal of OS was an equitable basis for relief under CR 60(b)(6), and that the medical testimony was newly discovered evidence that should have resulted in vacation of the dependency orders under CR 60(b)(11). The former argument fails on the facts of this case and basic logic, while the latter contention suffers from numerous defects.

Initially, we note the basic fact that the parents never challenged the 2007 dependency ruling. That fact has a significant consequence in that this court is not in a position to review that decision. *E.g., In re Dependency of K.R.*, 128 Wn.2d 129, 142 n.7, 904 P.2d 1132 (1995) ("the time to contest the dependency and the facts supporting the dependency was on appeal of the dependency."); *In re Dependency of A.V.D.*, 62 Wn. App. 562, 565 n.5, 815 P.2d 277 (1991) (court unable to review agreed dependency order). Accordingly, the only dependency issues presented here involve the CR 60(b) motion. We review trial court rulings on the motion for abuse of discretion. *In re Welfare of J.N.*, 123 Wn. App. 564, 570, 95 P.3d 414 (2004). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

CR 60(b)(6) permits relief from a judgment, in part, when "a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." The prior judgment aspect of this rule

has no application here. The criminal conviction was entered more than two years after the initial dependency finding entered in March 2007; the criminal case had no effect on the dependency case. However, the termination order did depend on the criminal conviction. That order was vacated after the acquittal in the second criminal trial. All necessary relief resulting from the criminal conviction was accorded the parents.

The parents also argue that it is no longer equitable to maintain the dependency rulings in light of the acquittal of OS. This argument does not follow as a matter of basic logic. The acquittal established no fact other than the fact that OS was not guilty of child assault. It did not establish that she did not assault EBS. It most certainly did not establish that the child's injuries were accidental. This is the fallacy of inferring a positive fact from a negative finding. The fact that the prosecutor failed to prove beyond a reasonable doubt that OS assaulted EBS neither establishes that she did not do so nor that the child was not assaulted. As has long been noted, "the converse of stated propositions does not in logic or law always follow." *County Court v. Armstrong*, 34 W. Va. 326, 12 S.E. 488, 490 (1890).[3]

---

[3] Or as more recently stated: "But it is a fallacy of logic to conclude that the company's failure to prove that Nigerian courts were available *ipso facto* establishes the converse: that such courts were unavailable." *Johnson v. PPI Tech. Servs., LP.*, 613 Fed. App'x. 309, 312 (5th Cir. 2015).

No. 32686-1-III (Consolidated with 32687-0-III; 32689-6-III; and 32690-0-III)
*In re R.B.S. & E.B.S.*

The fact of acquittal on the criminal charges was irrelevant to the dependency finding that predated the original criminal case by more than two years. CR 60(b)(6) did not support a claim for relief.

Equally unavailing is the parents' reliance on CR 60(b)(11), which allows consideration of "Any other reason justifying relief from the operation of the judgment." This catch-all provision is not available when the grounds for relief are already covered by a different subsection of the rule. *Lane v. Brown & Haley*, 81 Wn. App. 102, 107, 912 P.2d 1040 (1996) (citing cases). As the trial court noted, newly discovered evidence is squarely addressed by CR 60(b)(3).[4] While discussed in a following section of this opinion, any motion brought under the authority of (b)(3) was untimely due to the one year time limit imposed by CR 60(b).

The argument was without merit in any respect. Newly discovered evidence must have been undiscoverable within the time frame of CR 59(b)—ten days from the date of the judgment. No such showing was made here. The doctors who testified in the 2014 criminal trial were interpreting the original 2006 medical records. There was no reason they could not have testified in the 2007 dependency trial. Medical evidence was presented in that trial. The parents had every incentive for presenting this theory of accident in that proceeding; nothing prevented them from doing so.

_____

[4] "Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b)."

6

Accordingly, CR 60(b)(3) and (11) do not present any grounds for relief due to newly discovered medical evidence. The trial court correctly rejected the contention.

*Government Misconduct Claim*

The parents also contend that they are the victims of misconduct by various government actors, entitling them to relief under CR 60(b)(4) ("... misconduct of an adverse party"). One of the problems with this argument is that they never connected the alleged misconduct to the dependency action. The trial court correctly rejected this claim.

The assistant attorney general (AAG) who tried the dependency action[5] and the social worker on the dependency case engaged in an extra-marital affair that led to the breakup of their respective marriages. According to filings from their respective 2008 dissolution proceedings, the relationship dated to at least 2007. The guardian ad litem (GAL) in the dependency actions met the social worker in June 2006 and eventually became close friends with her. The social worker and her child briefly lived with the GAL and her husband after the break-up of the social worker's marriage.

After the criminal conviction, the social worker posted on Facebook that she worked as a "professional baby snatcher." She also made disparaging comments about the parents after the conviction. The social worker, however, was not involved in the termination case.

---

[5] A different AAG represented the State in this action.

7

It is from these facts the parents argue that the three noted state employees were biased against them, imputing the social worker's postconviction remarks to all three due to their respective friendships. There seems to be no basis for imputing the post-trial bias of the social worker to the GAL or the AAG. But, even if one were to do so, the claim fails on the fundamental fact that nothing ties the bias to the dependency trial. That a person might be biased against a person convicted of abusing a child does not establish that she also was biased several years earlier when the dependency case was tried. It also tells us nothing of how the alleged bias affected the 2007 dependency trial.

It was the parents' burden under CR 60(b)(4) to establish that fraud or misconduct of the opposing party prevented them from fully presenting their case. *Peoples State Bank v. Hickey*, 55 Wn. App. 367, 372, 777 P.2d 1056 (1989). They did not do so. The trial court expressly noted that it did not put much weight on the testimony of the social worker or the GAL at the dependency trial; the significant evidence was that from the medical doctors. CP at 314. Given that the fact-finder knew the relative lack of significance of the testimony of the now-challenged witnesses, the parents are unable to prevail on this claim.

The trial court had a very tenable basis for rejecting the CR 60(b)(4) claim. There was no abuse of discretion.

No. 32686-1-III (Consolidated with 32687-0-III; 32689-6-III; and 32690-0-III)
*In re R.B.S. & E.B.S.*

*Timeliness*

The trial court also found the CR 60(b) claims untimely. While this basis alone is dispositive of these aspects of this appeal, we have addressed it later to put the arguments in their proper context. Most of the previously discussed claims were untimely.

The first sentence of the final paragraph of the rule expressly provides:

> The motion shall be made within a reasonable time and for reasons (1), (2) or (3) not more than 1 year after the judgment, order, or proceeding was entered or taken.

CR 60(b).

The "newly discovered evidence" claim involving the medical testimony failed due to the one year time bar for motions brought under CR 60(b)(3). While the opinions of the two doctors were recent, having been obtained for the second criminal trial, they were not newly discovered evidence. Each doctor based his opinion on the original 2006 medical records. The records existed at the time of the dependency trial. The experts could have been called for that trial.

The other claims had to have been brought within a reasonable time. While the acquittal in the second trial was brought to the dependency court's attention within a reasonable time, as required for claims under CR 60(b)(6), it also was irrelevant in the dependency actions for the reasons previously noted.

The misconduct claim involving the government employees, CR 60(b)(4), failed the reasonable time test. The information in the 2008 dissolution filings was available for

9

six years before the motion for a new trial was filed, and the Facebook postings were available from the time of the first criminal trial in late 2009. There is no reason that these claims were not presented earlier. Waiting five or six years was not reasonable.

The trial court correctly determined that the newly discovered evidence and misconduct theories were untimely brought.

*Due Process*

Lastly, the parties claim that the use of the preponderance of evidence standard in the dependency action violated their due process rights. Because they insist that EBS was not abused, they contend that a more stringent evidentiary standard should be applied before finding abuse because parental denial of abuse precludes reunification with a dependent child. This claim was not brought in the trial court and is not properly before this court. It also is without merit.

RAP 2.5(a) sets forth the basic policy of appellate review in this state: an appellate court will generally not review an issue that was not presented to the trial court, although some limited permissive exceptions apply to that policy. The parents argue that the exception for manifest constitutional error found in RAP 2.5(a)(3) permits them to raise this argument now. However, further complicating the problem in this case is the scope of review. RAP 2.4(a). The 2007 dependency orders are not before this court. These appeals were taken from the 2014 denial of their motion to vacate the dependency orders.

The parents argue that CR 60(b)(11) permits them to argue whether the proper evidentiary standard was applied to the dependency trial. However, they did not even raise that claim in the motion to vacate.[6] In essence, they are trying to argue to this court a motion that they did not bring in the trial court in order to use their CR 60(b) motion as a vehicle to present a constitutional challenge to the dependency trial that is not even on appeal. This claim is at least two steps removed from what is before this court. Under no stretch of the imagination does this claim amount to manifest constitutional error. RAP 2.5(a)(3). This due process claim is not properly before this court.

Even if we reached the merits, the argument would be rejected. It is well established that the preponderance of the evidence standard in the dependency statute satisfies due process. *See In re Dependency of Schermer*, 161 Wn.2d 927, 942-943, 169 P.3d 452 (2007); *In re Welfare of J.K.*, 49 Wn. App. 670, 673-674, 745 P.2d 1304 (1987); *In re Dependency of Chubb*, 46 Wn. App. 530, 533-537, 731 P.2d 537 (1987); *see also In*

---

[6] The motion also would have failed in the trial court. Although CR 60(b)(11) broadly permits a motion to vacate for "[a]ny other reason justifying relief," that provision only is applied to extraordinary circumstances involving irregularities that are extraneous to the action or go to the regularity of the proceedings. *In re Marriage of Flannagan*, 42 Wn. App. 214, 221, 709 P.2d 1247 (1985); *In re Marriage of Thurston*, 92 Wn. App. 494, 499-500, 963 P.2d 947 (1998); *Tatham v. Rogers*, 170 Wn. App. 76, 100, 283 P.3d 583 (2012); *see also State v. Gamble*, 168 Wn.2d 161, 189, 225 P.3d 973 (2010) (applying the CR 60(b)(11) standard in analyzing the ends of justice exception to the mandatory joinder rule). Errors of law do not justify relief under CR 60(b)(11) because the appellate process provides adequate protection. *In re Marriage of Furrow*, 115 Wn. App. 661, 674, 63 P.3d 821 (2003); *In re Marriage of Hammack*, 114 Wn. App. 805, 810, 60 P.3d 663 (2003); *State v. Keller*, 32 Wn. App. 135, 140, 647 P.2d 35 (1982).

No. 32686-1-III (Consolidated with 32687-0-III; 32689-6-III; and 32690-0-III)
*In re R.B.S. & E.B.S.*

*re Welfare of A.W.*, 182 Wn.2d 689, 701-710, 344 P.3d 1186 (2015) (discussing dependencies in holding that the preponderance of the evidence standard in the guardianship statute satisfies due process); *In re Marriage of Wehr*, 165 Wn. App. 610, 613, 267 P.3d 1045 (2011) (applying the dependency standard by analogy to relocation hearings).

The due process claim does not relate to the appeal from the order denying the motion to vacate. It is not properly before this court.

The judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

I CONCUR:

_____
Lawrence-Berrey, J.

12

Nos. 32686-1-III; 32687-0-III; 32689-6-III; 32690-0-III

FEARING, J. (concurrence) — I concur with the majority's decision and analysis. The trial court did not abuse its discretion in denying OS's and BS's motions to vacate the dependency order. I write separately for four reasons.

First, a dependency finding and order significantly impacts a parent's right to the care and custody of a child. The rights to conceive and to raise one's children are deemed "'essential,'" "'basic civil rights of man.'" *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972) (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S. Ct. 625, 67 L. Ed. 1042 (1923); *Skinner v. Oklahoma*, 316 U.S. 535, 541, 62 S. Ct. 1110, 86 L. Ed. 1655 (1942)). The custody, care, and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder. *Stanley v. Illinois*, 405 U.S. at 651. The United States Supreme Court has long recognized a constitutionally protected interest of parents to raise their children without state interference. *Wisconsin v. Yoder*, 406 U.S. 205, 235-36, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972); *Pierce v. Society of Sisters*, 268 U.S. 510, 534, 45 S. Ct. 571, 69 L. Ed. 1070 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S. Ct. 625, 67 L. Ed. 1042 (1923).

Because of a dependency action's impact on parental rights, the State should be required to prove grounds for the dependency by clear, cogent, and convincing evidence. The majority is correct in noting, however, that the Washington Supreme Court has approved the preponderance of evidence standard in a dependency action. *In re Dependency of Schermer*, 161 Wn.2d 927, 942, 169 P.3d 452 (2007). This court remains bound by Supreme Court rulings.

OS and BS argue that the unique circumstances of this case demand the imposition of a high burden of proof. I readily agree that this appeal entails exceptional circumstances. Nevertheless, the Supreme Court has not announced any exception to its acceptance of a preponderance of evidence burden in a dependency action. Any deviance from the burden of proof will need Supreme Court approval.

Second, the majority fails to note the futility of OS and BS seeking to vacate the dependency order until after the acquittal of OS in the second criminal trial. The trial court did not vacate the termination of parental rights and would certainly not vacate the dependency order until after the acquittal. This obstacle explains the parents' delay in filing a motion to vacate the dependency. I agree with the majority, however, that CR 60 and principles emanating from the rule do not sanction such a delay.

Third, this court's opinion should not be read to sanction the behavior of the social worker. The social worker's Facebook postings particularly cause alarm. Instead, this court upholds the trial court's finding that he primarily relied on medical evidence, not testimony of the social worker or guardian ad litem, when granting the dependency

2

petition.

Fourth, the majority correctly notes that OS has not proven her innocence with regard to the injuries suffered by EBS. An acquittal only connotes the State failed to prove beyond a reasonable doubt the guilt of OS. This court should ponder, nonetheless, the possibility, if not probability, of OS being innocent and hope for a soon reuniting of OS and BS with their children in a manner amenable to the well-being of the children.

I CONCUR:

Fearing, J.