[No. 6039–6–II.   Division Two.   August 13, 1984.]

PENBERTHY ELECTROMELT INTERNATIONAL, INC., *Respondent,* v. UNITED STATES GYPSUM CO., *Appellant.*

*Lyman W. Hull,* for appellant.

*Murray J. Anderson,* for respondent.

PETRICH, C.J.—Defendant, United States Gypsum Com-

pany, appeals a trial court judgment awarding Penberthy Electromelt International, Inc., damages for breach of contract. The issues presented for review include: (1) whether there is substantial evidence to support the trial court's finding that there was an agreement to extend the delivery date; (2) whether the plaintiff repudiated the contract or failed to give assurances of performance; (3) whether the trial court erred in its calculation of damages; and (4) whether the trial court erred in issuing its pretrial protective order for plaintiff and conducting restrictive in camera proceedings during presentation of part of the plaintiff's case in chief. We affirm the trial court's judgment.

The events leading to the breach of contract action by Penberthy Electromelt International, Inc. (PEI) against United States Gypsum Company (Gypsum) are as follows.

PEI is a company in Tacoma which designs and manufactures custom furnaces for glass, ceramics and other industries. Gypsum is a company which manufactures mineral wool for insulation. One of Gypsum's plants is in Tacoma. Mineral wool is produced by igniting basalt, steel slag and coke in a furnace until a pool of molten mineral is formed. It drains out of the furnace onto a spinning wheel, and mineral wool fibers are formed as blasts of air hit the wheel and the molten minerals are cooled and blown down into chambers. Gypsum sought to improve upon this somewhat wasteful process and contracted with PEI for construction of a forehearth melter. Gypsum agreed to pay $145,000 at various stages of completion and delivery for the forehearth. Time was of the essence and the delivery date was set for October 30, 1979, 22 weeks after PEI received their first payment for execution of the agreement.

Various technical complications arose during construction. A design modification was proposed by PEI for oxidizing molten iron in the furnace. This proposal was introduced in mid–July and tests called bubbler block tests for this oxidization were conducted in October and November 1979.

Gypsum authorized and paid for these tests. On October

24, after the first bubbler block test, Mr. Penberthy of PEI and Mr. Blim of Gypsum conversed on the telephone about the forehearth melter construction progress. PEI estimated the delivery date for the forehearth 12 weeks from completion of the second bubbler block test, which was conducted in November. Gypsum confirmed this delivery date by letter.

The bubbler block tests failed and in late November Gypsum met with PEI to discuss completion. On January 25, however, Gypsum canceled the contract, whereupon PEI sued for nonpayment. PEI's theory at trial was that Gypsum had agreed to extend the delivery date and had canceled the contract prior thereto.

Gypsum challenges the trial court's finding of fact 16:

The parties orally agreed to extend the Forehearth delivery date to a date twelve weeks after completion of the second bubbler test. On October 25, 1979, Blim wrote Mr. Penberthy to confirm the telephone conversation between them concerning the bubbler tests and completion of the contract.

Gypsum contends the evidence at trial did not show intent to agree to an extension of time for delivery since statements by PEI about the 12–week extension were merely off the cuff remarks by Mr. Penberthy.

▪ Evidence including the evidence supporting unchallenged findings of fact 30 and 34 (verities on appeal) support the trial court's finding that there was an agreed extension of the original termination date. Findings of fact 30 and 34 state that considerable delays in the forehearth construction were incurred due to Gypsum's inability to determine the frequency of the required removal of slag which interfered with the entire production process. Gypsum was anxious to reduce the frequency of such removal of slag in order to reduce the cost of the forehearth and to improve the efficiency of the entire mineral wool process. Both Gypsum and PEI cooperated on the problem of slag removal by development of the bubbler block process. PEI proposed and Gypsum authorized two bubbler block trials

in mid–October and November. The delivery date was originally set for October 30. On October 24, PEI estimated delivery 12 weeks after completion of the second bubbler block trial. Gypsum's purchasing manager sent PEI a letter dated October 25 stating management had been advised of the extended 12–week delivery date. The purchasing manager was the officer in Gypsum who negotiated and signed the forehearth contract with PEI. Gypsum also contracted for the construction of a control room to operate the forehearth after the original termination date. The control room was not completed until after January 31, 1980. Gypsum's conduct substantially supports the trial court's finding that the parties agreed to extend the delivery date for the forehearth.[1]

Gypsum also argues that because PEI did not give adequate assurances of performance, Gypsum was entitled to cancel the contract. RCW 62A.2–609 provides that when reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance. Failure to provide such assurance within a reasonable time not exceeding 30 days is a repudiation of the contract.

■■ Gypsum contends that its letter of October 25 constituted a written demand for assurances. Therein the purchasing manager for Gypsum wrote he wanted to meet with Mr. Penberthy to discuss all aspects of the contract. This language is not enough to constitute a written demand for assurances. Moreover, Gypsum has failed to support

---

[1]Although not relied on in reaching its decision the court notes that conclusion of law 4 states: "PEI & Gypsum agreed to extend the termination date of the contract until a time 12 weeks after completion of the second bubbler test." This conclusion of law is actually a finding of fact for it determines that something occurred independent of any assertion as to its legal effect. *Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.*, 21 Wn. App. 194, 584 P.2d 968 (1978). Conclusions of law shall be treated as findings of fact if in the nature of findings. *Ferree v. Doric Co.*, 62 Wn.2d 561, 383 P.2d 900 (1963). In this case, Gypsum should also have assigned error to conclusion of law 4 as a finding of fact and set it forth verbatim in its brief. *Thomas v. French*, 99 Wn.2d 95, 659 P.2d 1097 (1983).

this theory by citing to the record to show a reasonable basis for Gypsum's insecurity. Finally, the trial court made no finding of fact relative to demand for assurances and PEI's failure to submit assurances. After considering the evidence, we conclude that the absence of such a finding constitutes a negative finding. *Lobdell v. Sugar 'N Spice, Inc.,* 33 Wn. App. 881, 658 P.2d 1267 (1983).

Gypsum contends next that even if the delivery date was mutually agreed upon as 12 weeks from completion of the second bubbler block trial, PEI nevertheless anticipatorily repudiated the contract by unilaterally extending delivery to April for a total of 20 weeks past the original deadline.

PEI asks this court not to consider this issue, claiming it was not presented to the trial court below. Our review of the record, however, reveals clearly that Gypsum did raise this issue below. In closing argument, Gypsum contended that even if the delivery date was extended to 12 weeks after completion of the second bubbler block test to approximately the end of January, Mr. Penberthy's letter of January 14 constituted an anticipatory repudiation of the newly agreed upon delivery date. In that letter, Mr. Penberthy stated that he put a hold on final design and manufacture during and after the bubbler block trials to see if Gypsum was actually going to cancel. He then estimated the final delivery date as 20 weeks after the October 30 original delivery date. Gypsum contended this unilateral extension constituted anticipatory repudiation.

■ The trial court did not, however, enter findings of fact on the issue of anticipatory repudiation by PEI. No finding as to a material fact constitutes a negative finding unless there is undisputed evidence which an appellate court can hold compels a contrary finding. *Lobdell v. Sugar 'N Spice, Inc., supra.* Unchallenged findings 22 and 23, verities on appeal, state that PEI put the forehearth work on hold while waiting to hear from Gypsum about cancellation. The trial court's oral opinion, which is consistent with these findings and may, therefore, be used to interpret them, *Johnson v. Whitman,* 1 Wn. App. 540, 463 P.2d 207

(1969), states that PEI was perfectly justified in waiting for Gypsum to determine whether it would cancel the contract. This course of conduct by the parties raises the inference of waiver of an exact 12–week delivery date. We are not compelled to find that PEI anticipatorily repudiated the contract.

■ Gypsum challenges next the trial court's calculation of damages in its findings of fact. Gypsum has not complied with RAP 10.4(c) by setting forth the challenged findings of fact verbatim in its brief; therefore *Thomas v. French,* 99 Wn.2d 95, 659 P.2d 1097 (1983) precludes our review of that issue.

Gypsum's final assignment of error is to the trial court's pretrial protective order for PEI and its restrictive in camera proceedings during PEI's case in chief.

The trial court issued a pretrial protective order under which photographs, drawings and test results of the forehearth were under seal with the court. During direct examination of Mr. Penberthy at trial PEI introduced exhibit 25, a photograph of a forehearth built after Gypsum had terminated the contract, to show it was of the size called for by the contract and had attained the heat level called for by the contract. Gypsum, on cross examination, attempted to learn other design and operating aspects of the forehearth shown in exhibit 25. The witness refused to answer on the basis that this inquiry led into sensitive technical areas. The trial court then continued in camera to determine whether PEI had a trade secret in the design of the forehearth. The court ruled in the affirmative and exhibit 25 was admitted.

CR 26(b)(1) allows a broad scope of discovery, the only restrictions being that the matter must be relevant and not privileged. CR 26(c) provides that upon "good cause shown" the court may make "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . (7) that a trade secret or other confidential research, development or com-

mercial information not be disclosed or be disclosed only in a designated way . . ."

Gypsum complains that PEI did not meet its burden of good cause for protection, because PEI did not show that the forehearth melter design was a trade secret or other confidential research or development. This argument is undercut by the existence of confidentiality clauses in the contract. Gypsum agreed to prevent disclosure of details, design features and technology of the forehearth to third parties. The record shows that PEI took steps to safeguard design and construction of its forehearth at its factory. The record also shows that PEI inserted confidentiality clauses in a contract for sale of a forehearth to another vendee. The trial court did not err in ruling PEI had a trade secret or other confidential commercial information which needed protection.

Gypsum's main argument is that the trial court abused its discretion in ordering protection more onerous than necessary.

Under CR 26(c) the trial court exercises a broad discretion to manage the discovery process in a fashion that will implement the goal of full disclosure of relevant information and at the same time afford the participants protection against harmful side effects. *Rhinehart v. Seattle Times Co.*, 98 Wn.2d 226, 654 P.2d 673 (1982). Gypsum argues that the introduction of exhibit 25 for the purpose of showing PEI was capable of producing a forehearth under the contract specifications operated as a waiver of PEI's right to protection for design and operating specifics of the forehearth. Gypsum does not support this argument with citation to appropriate authority. Gypsum did not dispute PEI's statements that the forehearth shown in the photograph was of the contract specification size or that it had attained a certain heat level. Gypsum sought to explore other alternative potential defects in the forehearth's design or operation to bolster its grounds for termination. In support of this, Gypsum challenges, on appeal, the trial court's finding of fact 10 in which the trial court stated:

"There is nothing to indicate that PEI would not have been able to complete such a forehearth within the time prescribed were it not for the technical explorations which were mutually agreed by the parties during the contract period." It was within the trial court's broad discretion to determine that inquiry into alternative *potential* grounds for termination was outweighed by the need to protect PEI's confidential research, development or commercial information. We cannot say that the trial court abused its discretion.

The trial court's judgment is affirmed.

PETRIE and WORSWICK, JJ., concur.