[No. 25734-0-I.   Division One.   August 26, 1991.]

GAREY W. KRAMER, ET AL, *Appellants,* v. J.I. CASE
MANUFACTURING CO., *Respondent.*

*George H. Luhrs,* for appellants.

*Lee Corkrum, Phillip C. Raymond, Cameron G. Comfort,* and *Ogden Murphy Wallace,* for respondent.

AGID, J. — Garey Kramer[1] appeals a judgment of dismissal entered on a defense verdict in his product liability action against J.I. Case Manufacturing Co. (Case). Kramer contends that the trial court erred in treating this case as one filed under the tort reform act, in refusing to instruct the jury on several alternative liability theories, in limiting his discovery, and in making several

---

[1] Garey Kramer is joined in this appeal by his family members Rita and Gavin. Because the issues concern only Garey, for convenience he alone is referred to hereafter as "Kramer".

evidentiary rulings. He also asserts that the trial court erred in denying his motion for a new trial. We affirm.

Kramer is a former construction worker. On October 3, 1985, he worked as a cement cutter on a water line installation job. Using a concrete saw, Kramer made cuts down the length of a slope on 7th Avenue West. As a result of these cuts, the slope was covered with slurry, a very fine, slippery mud.

While Kramer worked cutting the concrete, another worker, Steve Nelson, operated a Case backhoe near the top of the slope. During a repositioning maneuver in which Nelson used the pavement breaker attached to the backhoe's boom as an anchor, the backhoe went out of control and slid or rolled down the hill. The backhoe's shovel knocked Kramer down and dragged him 50 feet. Kramer suffered injuries to his left heel, both ankles and back, as well as numerous scrapes and bruises. Kramer was unable to return to his former employment.

On July 31, 1986, Kramer filed a product liability action in King County Superior Court against several defendants, including Case. He alleged that the backhoe was not reasonably safe in design or construction, and that inadequate warnings were provided. Kramer filed an amended summons and complaint on October 29, 1986, before any defendant filed an answer, and evidently before any defendants were served. Kramer paid a second filing fee at this time. Presumably because of the filing fee payment, the court clerk assigned the amended complaint a new cause number. Case was served with a copy of the amended summons and complaint on October 31, 1986.

The matter went to trial in December 1989. The jury entered a defense verdict, finding that Case did not "supply a product in which the boom was not reasonably safe as designed or was not reasonably safe because adequate warnings or instructions were not provided with the product". Consequently, the jury did not reach questions

of contributory negligence or damages. Kramer moved for a new trial. The court denied his motion. This appeal followed.

## ADEQUACY OF RECORD

A preliminary issue concerns the adequacy of the record. In an effort to limit his expenditures, Kramer had only a partial verbatim transcript prepared. Case thought the record inadequate and obtained from the trial judge an order requiring Kramer to supplement the existing transcript. Kramer did not do so, and Case moved in this court for an order mandating compliance with the trial court order or dismissing the case. On January 4, 1991, the commissioner denied Case's motion. He ordered that:

> The Kramers' appeal on the merits may proceed on the record they have provided. This ruling in no way finds that record sufficient for purposes of appellate review. If a panel later agrees with the trial court that additional record is necessary, it may refuse to consider the issue on appeal. *State ex rel. Dean v. Dean*, 56 Wn. App. 377, 382, 783 P.2d 1099 (1989).

Case attacks this ruling in its respondent's brief filed 1 month after the commissioner's order. Its attack is untimely. A party aggrieved by a commissioner's ruling can only object by a motion to modify filed no later than 10 days after the ruling is filed. RAP 17.7. If no such motion is filed, the ruling becomes a final decision of the court. *Gould v. Mutual Life Ins. Co.*, 37 Wn. App. 756, 758, 683 P.2d 207 (1984); *see also State v. Rolax*, 104 Wn.2d 129, 135, 702 P.2d 1185 (1985).

In any event, we see no basis for setting aside the commissioner's ruling and dismissing Kramer's appeal. Case has not demonstrated that it suffered any prejudice from the lack of a complete record. There is, therefore, no reason to employ any sanction other than the ordinary sanction of refusing to consider matters for which there is an inadequate record. *E.g., State ex rel. Dean v. Dean*, 56 Wn. App. 377, 382, 783 P.2d 1099 (1989).

## APPPLICATION OF TORT REFORM ACT

Turning to the merits, we first consider Kramer's contention that the trial court erred in ruling that the tort reform act (Act), which applies to complaints filed on or after August 1, 1986, governs this case. The trial court concluded that Kramer's July 31, 1986, filing did not preclude application of the Act because Kramer paid a second filing fee when he filed his amended complaint in October 1986 and only served defendants under the cause number assigned to the October complaint. In so ruling, the court relied on RCW 4.16.170, the tentative commencement statute, which establishes when filing the summons and complaint alone can toll a statute of limitations. The court reasoned that, although RCW 4.16.170 expressly concerns only the tolling of limitation statutes, it also establishes that a lawsuit does not "blossom . . . into a full lawsuit" unless service is made within 90 days of the day a suit is filed.

■ RCW 4.16.170 does not apply to the issue presented here in this manner. The statute is only a tentative commencement provision which states that, for "the purpose of tolling any statute of limitations", an action is commenced when the complaint is filed. If service is not made on the defendant within 90 days of the date of filing, "the action shall be deemed to not have been commenced for purposes of tolling the statute of limitations." RCW 4.16.170. This provision has been consistently interpreted as governing only when the statute of limitations is tolled, and as being inapplicable when both service and filing are accomplished within the limitation period. *See Collins v. Lomas & Nettleton Co.*, 29 Wn. App. 415, 418-19, 628 P.2d 855 (1981); *Hansen v. Watson*, 16 Wn. App. 891, 892-93, 559 P.2d 1375, *review denied*, 88 Wn.2d 1018 (1977). Thus, so long as the statute of limitations has not expired, "it is immaterial that the service and filing were not accomplished within 90 days of each other." *Hansen*, 16 Wn. App. at 893.

Nevertheless, the trial court's decision to apply the tort reform act in this case was not error. The mere act of filing a complaint does not toll a statute of limitations. RCW 4.16.170. Here, Kramer *never* served Case with a summons and complaint bearing the cause number assigned to the original July 1986 complaint.[2] Consequently, the statute of limitations continued to run on that complaint and has since expired.[3] *See Collins*, 29 Wn. App. at 418.

■ In any event, we are convinced that even if the trial court had erred in applying the Act to this case, the error did not affect the outcome of trial and would not require reversal. This is because the applicable portion of the Act is concerned only with allocation of damages, *i.e.*, in certain situations, the Act rejects joint and several liability in favor of a proportional fault formula.[4] Here, the jury never reached the issue of damages and thus never considered how damages should be apportioned. Instead, it determined that Case had not manufactured an unsafe product and therefore incurred no liability. Despite Kramer's creative arguments to the contrary,[5] we are not

---

[2]The fact that Case filed its answer under the original cause number is of no significance to us. The parties' explanations of why this occurred differ substantially, and the trial court was never asked to make a determination about which party's version of events was more credible. In this situation, we are unwilling to conclude that Case somehow waived its right to assert the Act's applicability by proceeding with this case under one cause number rather than the other.

[3]Any other result would raise due process concerns, as a defendant who is never served has no opportunity to raise objections to the filing and service.

[4]Under RCW 4.22.070, unless a plaintiff is not contributorily negligent, each negligent party is responsible only for its proportionate share of fault. For example, in a worker injury case in which the worker is partially negligent, a product manufacturer is liable only for its proportional share of liability, despite the injured worker's employer's immunity from suit. Before the Act, the same manufacturer could have been liable for all of plaintiff's damages under principles of joint and several liability. *See generally* Peck, *Washington's Partial Rejection and Modification of the Common Law Rule of Joint and Several Liability*, 62 Wash. L. Rev. 233, 236, 244-45 (1987).

[5]One of Kramer's contentions, that application of the Act prevented him from asserting principles of intervening cause, is without legal basis. Under the Act,

persuaded that the court's decision to apply the Act in this case influenced the jury's determination on the liability issue. *See generally American Oil Co. v. Columbia Oil Co.*, 88 Wn.2d 835, 842, 567 P.2d 637 (1977) ("[e]rror relating solely to the issue of damages is harmless when a proper verdict reflects nonliability"); *Stuart v. Consolidated Foods Corp.*, 6 Wn. App. 841, 845, 496 P.2d 527 (same), *review denied*, 81 Wn.2d 1002 (1972). Consequently, even if the trial court had erred in applying the Act, its error would not have been grounds for reversal.

## ALTERNATIVE THEORIES OF LIABILITY

Kramer's next assignment of error concerns the trial court's decision to preclude evidence relating to alternative liability theories which Kramer identified shortly before trial. The trial court's ruling was based on its conclusion that Kramer's alternative theories were not disclosed in a timely manner.

Until 6 or 7 weeks before trial, Kramer had disclosed only two negligence theories to Case: (1) that the boom on the backhoe was either improperly designed or defectively manufactured, a defect which caused the boom to break under normal use; and (2) that Case failed to provide adequate warnings of this safety problem. Then, on October 20, 1989, Kramer filed a supplemental answer to interrogatories in which he alleged that the backhoe was faulty in several other respects, including having inadequate warnings about operating the backhoe while using a pavement breaker, negligent design of the seat and controls, and inadequate brakes. On November 30, Kramer telephoned Case to inform it that he was also alleging that the backhoe was negligently designed because it lacked an air horn.

---

liability is proportioned on the basis of "fault". RCW 4.22.070. "Legal requirements of causal relation apply both to fault as the basis for liability and to contributory fault." RCW 4.22.015. Thus, our Supreme Court noted in a pre-Act case that application of the Act would not affect its discussion of superseding cause. *Campbell v. ITE Imperial Corp.*, 107 Wn.2d 807, 811 n.1, 733 P.2d 969 (1987).

In a pretrial motion, Case moved for an order limiting Kramer's recovery theories to negligent boom design and inadequate warnings about that problem. It argued that Kramer's additional negligence theories were not timely disclosed in that they came after the court-ordered cutoff date for identifying rebuttal experts, after Kramer's expert was deposed, and just days before the discovery cutoff date. The trial court granted Case's motion.

On appeal, Kramer contends that the trial court abused its discretion by ruling in Case's favor and limiting his theories of recovery. He relies on *Snedigar v. Hodderson*, 53 Wn. App. 476, 768 P.2d 1 (1989), *aff'd in part, rev'd in part*, 114 Wn.2d 153, 786 P.2d 781 (1990). His reliance is misplaced. *Snedigar* concerns the question of when a trial court abuses its discretion by ordering the most serious sanctions of default or dismissal under CR 37(b)(2). This case concerns less severe sanctions imposed under CR 26(e)(4), which authorizes the court to impose the terms and conditions it deems appropriate when a party has failed to seasonably supplement its discovery responses.

No Washington case has been located which addresses when evidence relating to a theory of liability can be excluded for untimely disclosure. The Washington courts have, however, frequently addressed the analogous situation of when the testimony of an expert who was not identified in a timely manner may be excluded.

■ Exclusion of an expert's testimony is an appropriate sanction for failure to timely supply supplementary responses to interrogatories. *M/V La Conte, Inc. v. Leisure*, 55 Wn. App. 396, 402, 777 P.2d 1061 (1989); *Detwiler v. Gall, Landau & Young Constr. Co.*, 42 Wn. App. 567, 572-73, 712 P.2d 316 (1986). The decision to use this sanction is discretionary with the trial court and will not be disturbed absent an abuse. *Lampard v. Roth*, 38 Wn. App. 198, 202, 684 P.2d 1353 (1984). It is an abuse of discretion to exclude testimony as a sanction absent any

showing of intentional nondisclosure, willful violation of a court order, or other unconscionable conduct. *Fred Hutchinson Cancer Research Ctr. v. Holman*, 107 Wn.2d 693, 706, 732 P.2d 974 (1987). Nondisclosure is, however, deemed willful absent a reasonable excuse. And, when willful noncompliance substantially prejudices the opponent's ability to prepare for trial, the exclusion of evidence is not an abuse of discretion. *Hampson v. Ramer*, 47 Wn. App. 806, 812, 737 P.2d 298 (1987).

Federal courts have applied rules similar to these in determining when it is appropriate to exclude evidence relating to a newly raised liability issue. In *Holiday Inns, Inc. v. Robertshaw Controls Co.*, 560 F.2d 856 (7th Cir. 1977), the court upheld exclusion of an alternative theory for recovery when the theory was not disclosed until 4 days before trial. The court reasoned that exclusion was appropriate because its pretrial disclosure surprised defendants and did not allow them time to prepare a rebuttal case. 560 F.2d at 858. Similarly, in *Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 456-57 (2d Cir. 1975), the court held that it was error to allow evidence on a theory first disclosed during trial.

The instant case is distinguishable from most of the cases cited above in that Kramer made all but one of his disclosures several weeks before trial while both parties were still conducting discovery. Nevertheless, we are unable to say on this record that the trial court abused its discretion in limiting Kramer's liability theories. Kramer asserted his new theories just 5 or 6 days before the discovery cutoff, and Case argued that it would have to develop expert testimony to defend against these claims. Kramer never attempted to explain to the court why he had failed to identify his alternative liability theories at an earlier date. In this situation, we have no recourse but to affirm the trial court's ruling which was

within its discretion.[6] *See generally Coggle v. Snow,* 56 Wn. App. 499, 507, 784 P.2d 554 (1990) (discretion is abused when it is exercised on untenable grounds or for untenable reasons).

■ Next Kramer argues that, because Case presented evidence that the backhoe operator was negligent in failing to set the parking brake and perform other accident prevention measures, it "opened the door" on the issues of negligent design of the brake and seat. Accordingly, Kramer argues, the trial court should have instructed the jury on these issues. Kramer made this same argument to the trial court, which ruled that any evidence relating to the design of the brake and seat was offered only on the issue of whether the backhoe was operated in a negligent manner, and thus did not affect the pretrial ruling precluding instruction on these alternative liability theories. We affirm this ruling, as it reflects accurately the understanding of the parties after the court's pretrial decision.[7]

After the trial court granted Case's motion to limit proof of negligence to boom design and manufacture and lack of warnings, the judge acknowledged that in order to give a complete picture of what happened, evidence as to

---

[6] While we are constrained to affirm the trial court's ruling, we are not entirely sanguine about doing so. This is not because the trial court erred, but rather because of trial tactics which we do not condone. Case delayed moving to disallow Kramer's proposed new theories until the eve of trial, thus preventing the court from fashioning a remedy which would have permitted Kramer to present his new theories. Additionally, in light of Case's presentation at trial of evidence relating to the same backhoe features which Kramer had not been allowed to attempt to prove were unsafe, its claim to the trial court that it was prejudiced by Kramer's delay in identifying the new theories now appears disingenuous. This cannot affect our review on this issue, however, as the trial court was required to make its ruling prior to the commencement of trial, and we cannot examine its pretrial ruling with the wisdom of hindsight.

[7] Moreover, based on the partial record before this court, the evidence at trial appears insufficient to support the requested instructions. Responsibility for this insufficiency rests not with the court but with Kramer, who evidently failed to ask the trial court to reconsider its pretrial ruling and allow him to present evidence on these theories after Case had purportedly "opened the door".

what the operator did and did not or could not do was admissible. He also recognized that a necessary corollary of such evidence was evidence relating to the allegedly awkward seat mechanism and inaccessible parking brake. Nevertheless, the judge admonished the attorneys to "abide with the rules of court" and emphasized that the purpose of the pretrial ruling "is to preclude argument on that in connection with instructions."

Given the court's and the parties' pretrial understanding that evidence relating to the seat and parking brake necessarily would be part of the trial but would not be used to support instructions on Kramer's alternative liability theories, Kramer's argument that admission of that evidence somehow entitled him to an instruction on those theories must fail. Contrary to Kramer's assertions on appeal, this understanding establishes that the liability issues were not expressly or impliedly tried with both parties' consent. Because the entire trial proceeded on the theory that only negligent boom design and related defective warnings would go to the jury, neither party fully tried the alternative theories. Kramer's reliance on CR 15(b) is, therefore, misplaced.[8] For the same reasons, Case's presentation of evidence on these issues did not "open the door" and thus allow jury instructions on the additional theories.

### VIDEO RE-CREATION OF ACCIDENT

Kramer's next assignment of error is to the trial court's ruling admitting a videotape, exhibit 83, prepared by Case to support its contention that a properly operated backhoe would not have gone out of control and slid or rolled down 7th Avenue West. At trial, Kramer objected to the video on the ground that the conditions under which the demonstration was made were not sufficiently similar to conditions on the day of the accident to allow admission of the video. The court overruled his objection.

---

[8]CR 15(b) allows pleadings to be amended to conform with the evidence when issues are tried by express or implied consent of the parties.

■ Demonstrative evidence is admissible if the experiment was conducted under conditions reasonably similar to the conditions existing at the time of the event at issue. 5 K. Tegland, Wash. Prac., *Evidence* § 93, at 294 (3d ed. 1989). Whether the similarity is sufficient is a matter for the trial court's discretion. If the similarity is sufficient to justify admissibility, any lack of similarity goes to the weight of the evidence. *Jenkins v. Snohomish Cy. PUD 1*, 105 Wn.2d 99, 107, 713 P.2d 79 (1986).

Here, the defense witness who testified about exhibit 83 said that he had made the slurry "as slippery as I could get it" and that he believed the slope on the day of the demonstration was more slippery than it was on the day of the accident. Given this testimony, the trial court correctly exercised its discretion to conclude that any difference in slipperiness between the demonstration and the accident was not sufficient to warrant excluding the videotape. *Jenkins*, 105 Wn.2d at 107-08. The trial court's ruling admitting exhibit 83 is affirmed.

## LIMITATION ON DISCOVERY

Kramer also challenges one of the trial court's discovery rulings. Before notifying Case of his alternative liability theories, Kramer issued a subpoena duces tecum. The subpoena sought all records of failure of Case backhoes, omitting any references to sideways roll-over accidents, but including any accident in which the hoe has, by any description, run away. Case objected on the basis that the only contested issue was whether or not the backhoe boom failed, and thus the request for records relating to all runaway accidents was "overly broad, unduly burdensome, and seeks irrelevant information." The trial court entered an order relieving Case from any duty to produce records of backhoe accidents except those "concerning boom breaks" on backhoe models similar to the one involved in the accident. Kramer assigns error to this ruling.

■ Under CR 26(b) and (c), a trial court has authority to limit discovery to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. In exercising this authority, the court has broad discretion to manage the discovery process so as to implement full disclosure of relevant information while protecting against harmful side effects. *Penberthy Electromelt Int'l, Inc. v. United States Gypsum Co.*, 38 Wn. App. 514, 521, 686 P.2d 1138 (1984). Thus, the Supreme Court has noted that "[t]he unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 81 L. Ed. 2d 17, 104 S. Ct. 2199 (1984).

The trial court's limitation of discovery came at a time when Kramer's liability theories concerned only the allegedly defective boom and inadequate warnings. Discovery relating to accidents in which backhoes had run away for other reasons was, therefore, properly precluded as it was not "reasonably calculated to lead to the discovery of admissible evidence." CR 26(b)(1).

## ALCOHOL AND SUBSTANCE ABUSE

Kramer's next assignment of error is that "[i]t was prejudicial error to allow evidence of plaintiff's alcohol and drug use." This assertion concerns the trial court's decisions on Kramer's pretrial motion to exclude evidence about his drug and alcohol use.

During argument on both parties' motions in limine, Kramer asserted that evidence about his alcohol abuse and past marijuana usage was irrelevant and highly prejudicial. In response, Case asserted that substance abuse was relevant on the issues of Kramer's earning capacity and work-life expectancy. Case argued that it could provide expert testimony that substance abusers have decreased work-life expectancies and earning capacity. The trial court deferred ruling on whether to allow the substance abuse evidence pending briefing by the

parties and an offer of proof by Case of the alleged expert testimony.

More than a week later, Case sought a ruling on the admissibility of evidence about Kramer's drug and alcohol usage. It wanted to cross-examine Kramer's economist about whether he had considered what effect Kramer's alcohol and drug history had on his earning capacity. Case's attorney sought this ruling despite having failed to prepare an offer of proof of expert testimony.

The trial court noted that WPI 34.04 was an appropriate instruction for this case. WPI 34.04 states that a mortality table's estimate of life expectancy is not controlling, "but should be considered in connection with all the other evidence bearing on the same question, such as that pertaining to the health, habits, and activity of the person whose life expectancy is in question." Reasoning that drug and alcohol abuse were habits relevant to life expectancy, the court ruled that a reasonable amount of evidence of Kramer's unhealthy habits was admissible.

After this ruling, Case cross-examined Kramer about his drug and alcohol habits. Kramer testified that he was an alcoholic working to control his addiction, that he currently used marijuana, and that he had used marijuana extensively prior to 1985.[9] At some point, Kramer's wife and sister also testified that Kramer has alcohol abuse problems. Case never tied this testimony to Kramer's life and work expectancy, however, as the court ultimately refused to allow Case's expert testimony on how these expectancies are affected by substance abuse.

Admissibility of a personal injury plaintiff's drinking habits was addressed in *Palmer v. Waterman S.S. Corp.*, 52 Wn.2d 604, 328 P.2d 169 (1958), *cert. denied*, 359 U.S. 985 (1959). Without considering the issue of prejudice, the

___

[9]Although Kramer did not object to all of Case's questions, this is not a case in which objection was necessary to preserve review. No objection to trial testimony is needed to preserve the right to review a ruling denying a motion in limine, so long as the ruling was final and definitive. *Sturgeon v. Celotex Corp.*, 52 Wn. App. 609, 621-23, 762 P.2d 1156 (1988). There is no reason to conclude that the trial court's ruling here was not final at the time it was made.

*Palmer* court held that, when the plaintiff was injured while in an intoxicated condition, evidence of his prior intoxication was properly admitted on the issue of his ability "to earn money by holding a steady job." 52 Wn.2d at 607.

*Palmer* is in accord with decisions from some other jurisdictions. *See, e.g., Oxford v. Hamilton*, 297 Ark. 512, 763 S.W.2d 83, 85 (1989) (evidence of plaintiff's alcoholism admissible in personal injury action to assist in determining life expectancy and awarding damages for loss of future earnings); *Jaramillo v. Fisher Controls Co.*, 102 N.M. 614, 698 P.2d 887, 896 (1985) (product liability plaintiff's conviction for DWI, reckless driving, disorderly conduct, and traffic violation properly admitted as substantive evidence on his life expectancy and the number of years for which damages for permanent injury and pain and suffering should be assessed). Other courts, however, have limited admissibility of such evidence. For example, the Ohio court has ruled that

> in an action to recover damages for personal injuries, evidence as to plaintiff's *intemperate habits prior* to the occasion when such injuries were sustained is admissible as tending to show a mitigation of damages for claimed impairment of ability to work, *only* after it is established that plaintiff's ability to work actually was impaired prior to such occasion, and that such impairment was the result of such intemperate habits.

(Italics ours.) *Shellock v. Klempay Bros.*, 167 Ohio St. 279, 289-90, 148 N.E.2d 57, 64, 75 A.L.R.2d 900 (1958). Similarly, in *Fultz v. Peart*, 144 Ill. App. 3d 364, 494 N.E.2d 212, 222 (1986), the court held that evidence relating to plaintiff's alcohol consumption before the injury-causing incident was properly excluded absent testimony regarding the duration and amounts of consumption, plaintiff's current drinking habits, or evidence that he suffered from alcoholism.

Here, the trial court allowed Case to question Kramer about: DWI arrests; the circumstances of a November 1989 automobile accident in which Kramer was involved

only as a passenger, but in which the driver was intoxicated; Kramer's participation in Alcoholics Anonymous; and his marijuana usage before the 1985 accident. This cross examination was allowed without any offer of proof establishing that the evidence was relevant, without any indication that Kramer's preaccident substance abuse had any effect on his employment,[10] and without any real indication of the extent of Kramer's current drinking and marijuana usage.

We recognize the broad discretion afforded a trial court in balancing the prejudicial impact of evidence against its probative value. *E.g., State v. Coe*, 101 Wn.2d 772, 782, 684 P.2d 668 (1984). Nevertheless, the circumstances of this case lead us to conclude that by allowing Kramer to be cross-examined about his substance abuse, the trial court abused its discretion. First, the ruling was premature because Case had not made an offer of proof establishing the probative value of the evidence. *Cf. Wilson v. Lund*, 74 Wn.2d 945, 949, 447 P.2d 718 (1968) (improper for court to find potential evidence irrelevant without an offer of proof or its equivalent). This is a particularly significant problem because the trial court ultimately decided to exclude expert testimony about the effect of substance abuse on work-life expectancy. Second, absent evidence of long-term, irreversible, adverse effects from marijuana smoking, it is difficult to discern the probative value of Kramer's preaccident marijuana smoking practices. Third, nothing in the record indicates that Kramer's drug and alcohol use prior to the 1985 accident affected his employment. Absent such evidence, the trial court had no basis to conclude that Kramer's substance abuse affected his earning capacity or work-life expectancy.

■ Although the trial court erred in allowing this evidence, its error is not a basis for reversing the judgment. Admittedly, we are quite concerned about the prejudicial

---

[10]Indeed, a representative of Kramer's employer at the time of the accident testified that Kramer had been an employee in good standing and had a good attendance record.

impact of this testimony. We are aware that it is certainly possible that the jury rejected Kramer's liability claims because it thought poorly of him. However, given the inadequate record, we are unable to determine whether there is a strong likelihood that this occurred and, if so, whether the jury thought poorly of Kramer because of his drug and alcohol use or because of his evasiveness and lack of credibility on other, unrelated issues.[11] Moreover, Kramer was not alleged to have been intoxicated at the time of the accident. Consequently, the improper evidence concerning his drug and alcohol use was only relevant to the issue of damages. The jury never reached the damage issue and instead entered a defense verdict on the basis of a lack of improper conduct by Case. Accordingly, despite admission of the prejudicial evidence, we are unable to conclude that it is a basis for reversal. *See American Oil Co. v. Columbia Oil Co.*, 88 Wn.2d 835, 842, 567 P.2d 637 (1977); *Stuart v. Consolidated Foods Corp.*, 6 Wn. App. 841, 845, 496 P.2d 527, *review denied*, 81 Wn.2d 1002 (1972).

## MOTION FOR NEW TRIAL

In his final assignment of error, Kramer alleges that the trial court abused its discretion in denying his motion for a new trial. He argues that the trial court's rulings, discussed above, combined with its allowance of rebuttal testimony about his physical capabilities by a previously unidentified witness, deprived him of substantial justice and mandated a new trial.[12]

---

[11]For example, Case was able to establish that Kramer had not really sought jobs for which he was qualified during the 3 years since the accident and that he apparently misrepresented his postaccident ability to play basketball.

[12]We are inclined to agree that Kramer did not have an adequate opportunity to present his case to the jury. However, responsibility for this lack of fairness rests primarily on Kramer, who failed to timely identify his alternative theories of liability and give timely notification of them to opposing counsel, and who failed to properly reassert these issues at trial. See footnote 7.

■ The grant or denial of a motion for a new trial is a matter within the trial court's discretion and will not be disturbed absent a showing of a clear abuse of that discretion. *Lockwood v. AC&S, Inc.*, 44 Wn. App. 330, 363, 722 P.2d 826 (1986), *aff'd*, 109 Wn.2d 235, 744 P.2d 605 (1987). Kramer has not made the requisite showing here. Analysis of Kramer's 18 assignments of error revealed one error committed by the trial court: erroneous admission of evidence concerning Kramer's drug and alcohol use. We cannot say that either this error or the additional ground urged on appeal, both of which relate primarily to computation of damages, necessarily affected the outcome of trial. *American Oil Co.*, 88 Wn.2d at 842; *Stuart*, 6 Wn. App. at 845.

In his motion and on appeal, Kramer has urged an additional ground for granting a new trial: that he was unfairly surprised by a Case rebuttal witness who testified about Kramer's postaccident ability to play basketball. The witness' testimony contradicted Kramer's testimony that his injuries had severely limited his participation in this sport. In closing, Case used this contradiction to portray Kramer as a dishonest person who may well have misrepresented his ability to work to both his doctors and to the jury.

The record shows that Case first spoke with its basketball witness on December 4, 1989, 2 days before trial commenced. However, Case did not reveal the existence of this witness and the substance of his testimony until after Kramer testified at trial on December 13, 14 and 15. This nondisclosure is a clear abuse of the discovery rules, and is another example of Case's reliance on trial tactics which we have already disapproved. See footnote 6.

■ Again, on this record, the trial court did not err in ruling that Case's discovery violation did not require a new trial. The decision to grant a new trial on the basis of surprise is a matter within the trial court's discretion, as only the trial court can assess the impact of the surprise

evidence. *Lockwood*, 44 Wn. App. at 364. Here, the surprise evidence concerned only the extent of Kramer's injuries and his veracity about their effect on his ability to work. It had nothing to do with the determinative threshold issue of Case's liability. In this situation, we cannot say that the trial court abused its discretion in deciding that the surprise testimony did not prejudice Kramer. As in *Lockwood*, 44 Wn. App. at 363, we conclude that improper admission of surprise evidence is grounds for a new trial only in circumstances which amount to prejudice.

The judgment is affirmed.

GROSSE, C.J., and BAKER, J., concur.