

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| LYNETTE ENEBRAD, individually and as the Personal Representative of the ESTATE OF ROBERT ENEBRAD, | ) ) ) | No. 75369-0-I |
| | ) | DIVISION ONE |
| Appellant, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| MULTICARE HEALTH SYSTEM, d/b/a MULTICARE AUBURN MEDICAL CENTER, a Washington corporation doing business within the State of Washington, King County; MARK H. TSENG, M.D. and JANE DOE TSENG, and the marital community composed thereof; MARK H. TSENG, M.D., P.C., a Washington professional corporation doing business within the State of Washington, King County; HEALOGICS, INC., and its affiliated corporation, DIVERSIFIED CLINICAL SERVICES, both Delaware corporations registered to do business in Washington, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Respondents, | ) ) | |
| and | ) ) | |
| HEALOGICS, INC., and its affiliated corporation, DIVERSIFIED CLINICAL SERVICES, both Delaware corporations registered to do business in Washington, | ) ) ) ) ) ) | |
| Third Party Defendants. | ) ) | FILED: February 20, 2018 |

TRICKEY, A.C.J. — In this medical malpractice case, Lynette Enebrad, on behalf of her deceased husband, Robert Enebrad,[1] sued MultiCare Health System d/b/a MultiCare Auburn Medical Center (MultiCare Health), Healogics, Inc., Diversified Clinical Services, Inc. (DCS), and Dr. Mark H. Tseng (collectively, MultiCare). The trial court granted summary judgment dismissing Enebrad's loss of chance claims against MultiCare, thereby restricting the case to her claim that Dr. Von Chang negligently failed to diagnose Robert's cancer in 2013. At trial, the trial court admitted evidence of Robert's prior drug use on limited issues. The jury found that the Dr. Chang was not negligent.

Enebrad appeals, arguing that summary judgment was not appropriate and that the trial court abused its discretion when it admitted evidence of Robert's prior drug use. Because Enebrad failed to submit an expert declaration assigning a value to the percentage of lost chance proximately caused by the defendants and has not demonstrated that she was unfairly prejudiced by the trial court's admission of evidence of Robert's prior drug use, we affirm.

## FACTS

Robert was a patient of Kent MultiCare Family Practice. On January 18, 2013, Robert saw Dr. Chang for an annual physical. Robert's medical records indicated that he had a skin graft on his left forearm, had a history of intravenous (IV) drug use along with heroin and cocaine abuse, and was taking methadone. Dr. Chang knew that Robert had a history of infections and cellulitis that led to his skin graft procedure in 2002. Even after the graft, Robert would occasionally develop ulcers in the scar tissue area of the graft.

Robert did not report any acute concerns to Dr. Chang at the visit. Dr. Chang

---

[1] We refer to Robert Enebrad as "Robert" and to Lynette Enebrad as "Enebrad" unless otherwise noted. No disrespect to the parties is intended.

observed that the skin donor site on Robert's left shin was dry but the skin graft site on his left forearm looked normal.

Dr. Chang saw Robert again on August 7, 2013. Robert was complaining of a growing lesion in his skin graft, which was two inches in diameter at the time of his visit. Dr. Chang referred Robert to the Wound Healing Clinic at MultiCare Health for immediate care.

On August 12, 2013, Robert saw Dr. Tseng at MultiCare Health. Dr. Tseng measured the lesion and ordered a biopsy. Dr. Tseng saw Robert for six more visits from August to early October. Robert's lesion grew aggressively.

Dr. Tseng did not see the results of the biopsy until October, although the biopsy report was dated August 14, 2013. The report concluded that "[t]he biopsy tissue is extensively involved by well differentiated squamous cell carcinoma with areas of necrosis."[2] Dr. Tseng recommended that Robert go to Harborview Medical Center's plastic surgery department for wound care and for covering of the lesion with a flap or graft.

On October 8, 2013, Dr. Jason Ko saw Robert at Harborview and reviewed his biopsy report from MultiCare Health. Dr. Ko diagnosed Robert as having a Marjolin's ulcer, a rare and very aggressive type of skin cancer.

On October 14, 2013, Enebrad and Robert had an appointment with Dr. Chang and requested stronger pain medication for Robert. Dr. Chang agreed to continue Robert's pain medication for a week. But after consulting a pain specialist, Dr. Chang decided to not provide Robert with future narcotics in light of his prior drug use.

---

[2] Clerk's Papers (CP) at 64.

3

Robert had surgery to remove the cancer at Harborview. During the procedure, it was discovered that the cancer was more extensive than previously thought. On November 25, 2013, Robert's left arm was amputated. Despite the amputation, the cancer continued to spread, and Robert died on October 19, 2014.

In February 2014, Enebrad sued MultiCare Health for medical negligence and damages. Enebrad alleged that MultiCare Health, through its employee or agent Dr. Tseng, negligently misdiagnosed and failed to treat Robert's squamous cell skin cancer, failed to review the biopsy report in a timely manner, and failed to immediately take steps to refer Robert to specialist care. MultiCare Health responded that Robert's injuries were caused by third parties. Healogics and DCS operated the Wound Healing Clinic, and Dr. Tseng was not an employee of MultiCare Health. MultiCare Health also asserted a third-party indemnity claim against Healogics and DCS. In October 2014, Enebrad amended her complaint to assert claims against Dr. Tseng, Healogics, and DCS.

MultiCare moved for summary judgment on Enebrad's claims. MultiCare argued that Enebrad had not offered expert medical testimony to establish causation.

Enebrad had asked Dr. Ko to submit a declaration in support of her case. On June 26, 2014, Enebrad e-mailed Dr. Ko and specifically asked him to "assign a percentage to [Robert's lost] chance (or a range of percentage)."[3] Dr. Ko responded that he could "[]not assign a percentage (range) to [Robert's lost chance]."[4]

Enebrad ultimately submitted a declaration from Dr. Ko in response to MultiCare's motions for summary judgment. Dr. Ko stated that the delay between Dr. Tseng's biopsy and Dr. Ko's diagnosis negatively impacted Robert's chance of a better outcome but did

---

[3] CP at 430.
[4] CP at 429.

4

not assign any percentage to his loss of chance. At Dr. Ko's deposition in April 2015, he stated that his conclusion was that the delays in diagnosis and treatment did not change the ultimate outcome of Robert's treatment.

MultiCare responded that Dr. Ko had failed to identify a numerical percentage of lost chance in his declaration and, therefore, it was legally insufficient to prevent summary judgment on Enebrad's claims against MultiCare. The trial court granted Enebrad multiple continuances so that she could submit a revised declaration from Dr. Ko.

Enebrad eventually submitted a declaration from Dr. H. Thomas Temple instead of a revised declaration from Dr. Ko. Dr. Temple declared that Robert likely had a lesion on his skin graft at his January 18 appointment with Dr. Chang, which Dr. Chang failed to notice or record. Dr. Temple stated that "[a]t the likely stage of Mr. Enebrad's cancer [at the January 18 appointment] he would have had a 98% chance or better to not only avoid amputation of his left forearm but to survive his disease."[5]

In its supplemental reply, MultiCare argued that Dr. Temple's declaration only supported a claim of negligence against Dr. Chang, and did not establish causation between MultiCare's actions and Robert's harms. MultiCare moved for the trial court to dismiss Enebrad's claims with prejudice, except for "those claims arising out of care provided by [Dr. Chang] to Robert Enebrad on January 18, 2013."[6] The trial court granted summary judgment on the claims against MultiCare, leaving only the claims against Dr. Chang arising from the January 18, 2013 appointment.

Prior to trial, MultiCare filed a motion in limine requesting permission to offer evidence of Robert's prior drug use at trial. MultiCare argued that such evidence was

---

[5] CP at 495.
[6] CP at 618.

relevant to Dr. Chang's affirmative defense of contributory negligence and on the issues of Robert's life expectancy and truthfulness in reporting his symptoms. The trial court ruled that evidence of Robert's prior drug use was relevant to life expectancy and pain management, but reserved its decision on the relevancy of the evidence to contributory negligence defense for trial.

At trial, Enebrad argued that Robert had a visible lesion on his left forearm at his January 18 appointment, and that Dr. Chang negligently failed to observe, diagnose, or treat it.[7] MultiCare contended that Dr. Chang performed a thorough examination of Robert on January 18 and did not observe any lesions, as reflected in his notes from the appointment. Further, Dr. Kent Carson testified about how Robert's prior drug use and skin graft led to the cancer spreading to Robert's bones before it affected his skin.

During trial, the trial court gave the jury an oral limiting instruction sua sponte. During MultiCare's direct examination of Dr. Michael Kovar, the trial court instructed the jury: "The Court has admitted evidence regarding Mr. Enebrad's drug usage, at least in this context, for one purpose only. And that is there's going to be an issue that's going to be raised with you regarding life expectancy. And I'm admitting this evidence so that you can consider that issue. But you should not consider the drug usage for any other purpose."[8]

The jury found that Dr. Chang did not fail to comply with the standard of care. Enebrad appeals.

---

[7] Dr. Temple testified via Skype at trial without giving prior notice to MultiCare or the trial court. The court reporter noted that Dr. Temple's entire testimony via Skype was inaudible and was not recorded. It is assumed that Dr. Temple's testimony at trial was substantively the same as his declaration.

[8] Report of Proceedings (RP) (May 2, 2016) at 482-83.

ANALYSIS

Summary Judgment

Enebrad argues that the trial court erred in granting summary judgment dismissing her loss of chance claims against MultiCare. Specifically, she contends that Dr. Ko's declaration sufficiently supported her claims, and that there were material issues of fact precluding summary judgment. Because the declarations of Dr. Ko and Dr. Temple did not assign a percentage of Robert's lost chance to MultiCare's actions, we disagree.

A lost chance claim is a form of a medical malpractice cause of action that can be based on a lost chance of survival or a lost chance of a better outcome. Rash v. Providence Health & Servs., 183 Wn. App. 612, 629-30, 334 P.3d 1154 (2014). A lost chance of survival claim arises when the patient died as a result of allegedly negligent treatment. Rash, 183 Wn. App. at 630. Specifically, in a lost chance of survival claim, although the patient's chance of dying was greater than 50 percent prior to the negligence, "the negligence reduced the patient's chances of surviving the condition." Rash, 183 Wn. App. at 630 (citing Herskovits v. Grp. Health Coop. of Puget Sound, 99 Wn.2d 609, 664 P.2d 474 (1983)).

In contrast, a lost chance of a better outcome occurs when the patient does not die but suffers adverse health consequences. Rash, 183 Wn. App. at 630-31. "In a lost chance of a better outcome claim, the mortality of the patient is not at issue, but the chance of a better outcome or recovery was reduced by professional negligence." Rash, 183 Wn. App. at 631 (citing Mohr v. Grantham, 172 Wn.2d 844, 857, 262 P.3d 490 (2011)). "[If] the malpractice reduced the chances of a better outcome by a percentage

7

of 50 percent or below," the case is analyzed as a lost chance of a better outcome. Rash, 183 Wn. App. at 631.

In both types of lost chance claim, the amount of the plaintiff's damages is based on the percentage of lost chance proximately caused by the negligence. Herskovits, 99 Wn.2d at 619 (Pearson, J., plurality opinion); Mohr, 172 Wn.2d at 858-59. The plaintiff must submit "testimony from an expert health care provider that includes an opinion as to the percentage or range of percentage reduction in the chance of survival." Rash, 183 Wn. App. at 636; see Christian v. Tohmeh, 191 Wn. App. 709, 731, 366 P.3d 16 (2015). Without this percentage, a trial court cannot determine whether to submit the case to the jury as a traditional malpractice wrongful death suit or as a lost chance claim or calculate the appropriate amount of damages. Rash, 183 Wn. App. at 636; Estate of Dormaier v. Columbia Basin Anesthesia, PLLC, 177 Wn. App. 828, 851, 313 P.3d 431 (2013).

An appellate court reviews "summary judgment rulings de novo, engaging in the same inquiry into the evidence and issues called to the attention of the trial court." Dowler v. Clover Park Sch. Dist. No. 400, 172 Wn.2d 471, 484, 258 P.3d 676 (2011).

Here, to survive summary judgment, Enebrad bore the burden of producing expert medical testimony establishing Robert's percentage of lost chance proximately caused by MultiCare. The declarations of Dr. Ko and Dr. Temple did not assign a percentage of Robert's lost chance to MultiCare. Dr. Temple's declaration only assigned a percentage of lost chance to Dr. Chang's individual negligence. Thus, Enebrad failed to carry her burden, and we conclude that the trial court did not err when it granted summary judgment dismissing her loss of chance claims against MultiCare.

Enebrad argues that Dr. Ko's declaration was sufficient by stating that the delay in diagnosis led to a delay in Robert's receipt of treatments "whose purpose is to significantly increase a patient's chance of a better outcome."[9] In support of her argument, Enebrad contends that the dictionary definition of "significant" supports an inference that Dr. Ko's statement included a percentage of lost chance.[10] She also analogizes the present case to Volk v. DeMeerleer, which held that it was not error to admit an expert's affidavit that did not provide a specific percentage of lost chance. 187 Wn.2d 241, 278-79, 386 P.3d 254 (2016).

Enebrad's arguments are unpersuasive. Her citation to the dictionary definition of "significant" cannot overcome case law clearly showing that Dr. Ko's declaration is legally insufficient. Further, Volk is inapposite because the lost chance doctrine did not apply. 187 Wn.2d at 276-79. We reject Enebrad's argument.

Enebrad also argues that a jury could have reasonably concluded that Robert suffered from lost chance due to his untimely diagnosis, and thus summary judgment was inappropriate.[11] Enebrad's argument ignores her failure to satisfy the legal requirement of providing an expert opinion assigning a percentage of lost chance in order to survive summary judgment. We reject Enebrad's argument.

---

[9] Br. of Appellant at 30. At oral argument, the parties argued over whether Dr. Ko's deposition testimony contradicted his declaration. Because we conclude that Dr. Ko's declaration was insufficient to satisfy Enebrad's obligation to offer expert testimony establishing a percentage of lost chance, we decline to reach this issue.

[10] Br. of Appellant at 29-30 (citing MERRIAM-WEBSTER'S ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/significant (last visited Mar. 21, 2017)).

[11] Enebrad also states that "[Robert] and his family were deprived of a fair trial," citing to the trial judge's evidentiary and summary judgment rulings. Br. of Appellant at 34. Enebrad does not support this statement with citation to legal authority or significant argument. RAP 10.3(4), (6). We decline to address Enebrad's unsupported reference to her right to a fair trial.

### Admission of Evidence of Prior Drug Use

Enebrad argues that the trial court abused its discretion when it admitted evidence of Robert's prior drug use. Specifically, she contends that MultiCare's arguments were pretextual and that the evidence was unfairly prejudicial. Because the evidence was probative and Enebrad has not established that she was unfairly prejudiced by its admission, we disagree.

"All relevant evidence is admissible" unless otherwise barred. ER 402. But relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ER 403.

The relevancy of the evidence is presumed, and the court's inquiry focuses on "whether its probative value is outweighed by its prejudicial effect." Carson v. Fine, 123 Wn.2d 206, 222, 867 P.2d 610 (1994). Evidence is probative if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

Shortened life expectancy is probative on the issue of recoverable damages in a medical malpractice case. See Adcox v. Children's Orthopedic Hosp. & Med. Ctr., 123 Wn.2d 15, 33, 864 P.2d 921 (1993); Woolridge v. Woolett, 96 Wn.2d 659, 666-67, 638 P.2d 566 (1981). Similarly, the health, habits, and activity of the person whose life expectancy is in question is relevant to the issue of damages. See Kramer v. J.J. Case Mfg. Co., 62 Wn. App. 544, 557-60, 815 P.2d 798 (1991).

"[U]nfair prejudice is caused by evidence likely to arouse an emotional response rather than a rational decision among the jurors." Carson, 123 Wn.2d at 223 (citing Lockwood v. AC&S, Inc., 109 Wn.2d 235, 257, 744 P.2d 605 (1987)). If the evidence at issue is probative to a central issue in the case, the likelihood of it being outweighed by the danger of unfair prejudice is "'quite slim.'" Carson, 123 Wn.2d at 224 (quoting United States v. 0.161 Acres of Land, 837 F.2d 1036, 1041 (11th Cir. 1988)).

If the possibly prejudicial evidence is admitted, an explanation should be made to the jury of the purpose for which it is admitted, and the trial court should give a cautionary instruction that it is to be considered for no other purpose or purposes. State v. Goebel, 36 Wn.2d 367, 378-79, 218 P.2d 300 (1950). "The jury is presumed to follow the court's instructions." Hizey v. Carpenter, 119 Wn.2d 251, 269-70, 830 P.2d 646 (1992).

"[T]he burden of showing prejudice is on the party seeking to exclude the evidence." Carson, 123 Wn.2d at 225. A trial court's decision to admit evidence under ER 403 will be reversed only for manifest abuse of discretion. Carson, 123 Wn.2d at 226.

Here, Robert's recreational drug use was probative on the issue of Robert's life expectancy. Dr. Temple stated in his deposition testimony that drug abuse was correlated with shortened life expectancy. At trial, Dr. Kovar testified that Robert's drug use habits considerably shortened his life expectancy. In addition, Dr. Carson testified about the aggressive nature of Marjolin's ulcers, and how trauma from Robert's drug use and his subsequent skin graft led to the cancer spreading to Robert's bones prior to breaking through the skin.[12] Thus, expert testimony from both parties established that Robert's prior drug use was probative to the issue of his life expectancy.

---

[12] Enebrad's statement of issues discusses the relevance of Robert's prior drug use to an alleged failure to mitigate damages. But Enebrad does not offer argument in support of this contention,

Because Robert's prior drug use was probative on the issue of his life expectancy, Enebrad bears the burden of demonstrating that the evidence's probative value was outweighed by unfair prejudice. Enebrad has not carried that burden. First, Enebrad argues that MultiCare "seized the opportunity to talk about drug use at every conceivable opportunity and with every single witness to take the stand," thereby putting Robert's character at issue and implying that he was not worthy of quality care.[13] This is not supported by the record. In questioning Enebrad's witnesses, MultiCare only asked Enebrad about Robert's prior drug use, and asked Dr. Temple about Robert's time in the methadone program. MultiCare did not raise the issue of Robert's prior drug use with two of its own medical expert witnesses. Further, MultiCare did not elicit testimony disparaging Robert's character.[14] Therefore, Enebrad's argument does not establish that she was unduly prejudiced by MultiCare's circumspect use of this evidence.

Second, Enebrad argues that the trial court's oral limiting instruction to the jury was ineffective, as demonstrated by a juror's question to Dr. Chang about whether Robert was completely sober during his visits. This is unpersuasive. The trial court provided the jury with a limiting instruction regarding Robert's drug use that reminded the jury to only consider it for the purpose for which it was admitted. Further, Dr. Chang responded to the juror's question by saying, "He's not impaired, no. He's very clear."[15] Dr. Chang's

---

and instead focuses solely on the life expectancy issue. We decline to address this argument. RAP 10.3(a)(6).

[13] Br. of Appellant at 23.

[14] We note that Robert's family members used negative descriptions of Robert's drug use during direct examination by Enebrad's counsel. See RP (April 27, 2016) at 229 ("You know, he wasn't some gutter scum drug addict. He was a middle class drug addict."); RP (April 27, 2016) at 240 ("I know the defense is trying to paint my father to be like he was a drug addicted rock star, but that wasn't the case.").

[15] RP (April 27, 2016) at 210.

response is more related to whether Robert accurately reported his symptoms rather than his continuing drug use. Therefore, Enebrad has not demonstrated that the juror's question demonstrates that the trial court's limiting instruction was ineffective or that the jury was unfairly prejudiced.

Third, Enebrad argues that evidence of drug use is generally inadmissible because it is inherently prejudicial. See State v. Tigano, 63 Wn. App. 336, 344-45, 818 P.2d 1369 (1991); State v. Renneberg, 83 Wn.2d 735, 736-39, 522 P.2d 835 (1974). This is unpersuasive. Both cases cited by Enebrad were criminal matters concerning the use of evidence of the defendant's prior drug use for impeachment purposes. Enebrad brought a civil malpractice suit in which evidence of Robert's drug use was admitted on the issue of his life expectancy and pain tolerance. Therefore, Enebrad's citation to criminal cases does not establish unfair prejudice outweighing the evidence's probative value.

Enebrad also argues that MultiCare failed to provide substantial evidence that Robert's life expectancy was shortened by his recreational drug use, analogizing to Kramer v. J.I. Case Manufacturing Co., 62 Wn. App. 544, 815 P.2d 798 (1991). In Kramer, the Court of Appeals held that cross-examination of witnesses about the plaintiff's prior drug use before an offer of proof had been made was improper. It also held that the probative value of evidence of the plaintiff's prior drug use was unclear without evidence of its long-term adverse effects or how it affected his employment. Kramer, 62 Wn. App. at 559.

The present case is distinguishable from Kramer. MultiCare made an offer of expert testimony that established a link between Robert's drug use and his reduced life expectancy. Dr. Kovar testified about the long-term impacts of heroin and cocaine use

13

and about how Robert's prior drug use shortened his life expectancy. Dr. Carson testified about the connection between Robert's drug use and the development of the Marjolin's ulcer in his left forearm. Viewed together, MultiCare made an offer of expert medical testimony that established the negative impacts of Robert's prior drug use on his life expectancy and the progression of the Marjolin's ulcer. We conclude that Enebrad's analogy to Kramer is inapposite.[16]

In sum, evidence of Robert's prior drug use was probative on the issue of his life expectancy. Enebrad's arguments in support of her contention that she was unfairly prejudiced by the admittance of the evidence and her analogy to Kramer are unpersuasive. We conclude that the trial court did not abuse its discretion when it admitted evidence of Robert's prior drug use on the issue of life expectancy.

## Sanctions

Dr. Tseng requests that this court impose sanctions on Enebrad's counsel for continuing to rely on Dr. Ko's declaration despite knowing it was legally insufficient.

> The appellate court . . . may order a party or counsel . . . who uses these rules for the purpose of delay, files a frivolous appeal, or fails to comply with these rules to pay terms or compensatory damages to any other party who has been harmed . . . or to pay sanctions to the court.

RAP 18.9(a).

Here, on appeal, Enebrad has raised debatable issues regarding the sufficiency of Dr. Ko's declaration and disputed the necessity of providing a percentage value of lost

---

[16] Enebrad also argues that Dr. Kovar's opinion was not factually supported, was inadmissible or incompetent, or was insufficient because he did not provide a specific number of years by which Robert's life expectancy was shortened. Enebrad has not cited legal authority or provided argument substantively challenging Dr. Kovar's qualification as a medical expert or his conclusions. We reject these arguments. RAP 10.3(a)(6).

chance to survive summary judgment. We conclude that her appeal is not frivolous, and decline to impose sanctions under RAP 18.9(a).

Affirmed.

Trickey, ACJ

WE CONCUR:

Mann, J.

Leach, J.